The next case on our call this morning is Agenda No. 10, No. 130199, People of the State of Illinois v. Ryan Johnson. Counsel to the appellant, are you prepared to proceed? Good morning, your honors. I may have pleased the court. My name is Zachary Wallace. I'm from the Office of the State Appellate Defender, and I'm here on behalf of the appellant, Ryan Johnson. There's perhaps no right more fundamental than the right to liberty. This is why the 14th Amendment provides that no state shall deprive any individual of their right to liberty, life, or property without due process of law. And this case deals directly with the deprivation of Mr. Johnson's liberty. Specifically, this case poses the question of whether the trial court's consideration of an improper factor in aggravation at sentencing affects the defendant's substantial rights such that the error is reviewable under the second prong of the plain error rule. And importantly, this court has already answered this question in Martin, where the court recognized that such an error clearly affects the defendant's fundamental right to liberty. What's the question in Martin resolved on first prong or second prong plain error? Well, your honor, in Martin, the question obviously was a factor inherent in the offense. And the court addressed forfeiture and waiver, and the court began by indicating that second prong plain error deals with substantial rights and found that the consideration of improper factor clearly affects the substantial rights of the defendant because it impinges on the right not to be sentenced by improper factor. In Martin, did the court hold that it was second prong plain error? What happened? Well, Martin conducted the analysis under both prongs. Martin did find the evidence was closely balanced. It conducted a first prong plain error. That's first prong, right? Yes, that's first prong. Again, Martin essentially conducted the analysis under both prongs. What was the holding in Martin? Was it based on a finding of error under the first or the second prong? Ultimately, the holding in Martin was that it's plain error because it affects the substantial rights of parties. That's where Martin concluded at. That was after conducting a first prong plain error analysis. So even to the extent that the holding is based on the court's first prong analysis, the court still recognizes in that case that this error does affect the fundamental right to liberty and affects the substantial rights of parties. And importantly, in the three decades since Martin, the appellate court has nearly universally held that the improper or the consideration of an improper factor in aggravation of a sentence is second prong plain error. And to the extent that that was not the holding in Martin, Martin certainly does stand for that principle of law that's been reaffirmed for over three decades now by the appellate courts. And at the outset, it's helpful to lay out the framework of the plain error analysis and the first steps to determine if clear and obvious error occurred. And here, the appellate court's already found that clear and obvious error occurred. The appellate court found that the trial court erred in considering this factor in aggravation of Mr. Johnson's sentence. And now the state argument... Can I ask a question about that? Yes. Let's, again, put this in some context. Mr. Johnson was convicted of charges of home invasion, two counts of home invasion, two counts of criminal sexual assault, and one count of aggravated domestic battery on his partner, his mother and his child. The jury found him guilty. Then the case proceeded to sentencing. At sentencing, evidence was presented by the state that he, Mr. Johnson, had three felony convictions as well as three misdemeanor convictions, and that of the three felony convictions, one was for domestic battery, aggravated domestic battery of another woman, and then also domestic battery of a specific woman in this case. And, in fact, that in that other conviction that was based on actions against this person, Lacey, he was on probation for the earlier domestic violence case. In the victim impact statement, or during trial, evidence was that they had a child and that six-year-old child was present in the house during this assault, this hour-long assault in the home. On the victim impact statement, Lacey, the woman, said that, described the impact this had on her child, her daughter, who witnessed the attack and had to ride with her in the ambulance to the hospital. Now, when they go to sentencing, there's a lot of discussion in the sentencing hearing from the state's attorney, and then finally the judge imposed a sentence looking at all the facts in this case. Now, if the judge had said, I'm taking into consideration the trauma inflicted by the defendant on his child by his actions, these violent actions in her presence, if he had said that, was that an improper aggravating factor? If the trial court had said that, based on what was said in the victim impact statement, I'm going to consider the impact on the offense, it would certainly be different than here, right? Because that's maybe, you know, he's considering the evidence that was presented at the sentencing hearing, part of that is the victim talks about the impact it's had on their child, so the court could likely consider that. But what happened here is that the state argues, as a factor of intervention, specifically position of trust over the victim. So it was phrased differently. It was phrased differently. Instead of the court saying there's evidence here that this horrific crime took place in the presence of his child, I'm taking that into consideration in imposing a sentence here. The state proposed that certain language be used about whether or not the child was, he had a position of trust over the child, and that language comes from a different statute. And so that's what we're talking about here, is that had the trial judge framed it one way, it would be okay, but he framed it a different way. And what we're really hearing is no one objected. The defense counsel, when those words were said, said nothing. It was only on appeal, then, that for the first time the issue was raised whether or not the court's use of that phrase, that this occurred where he was in a position of trust over this child, that that was error. And they were trying to figure out what does that mean when it was the first time that it's raised, correct? Is that kind of where we are? Correct, but I do think it's important to note that the court didn't consider – the court didn't – there's no indication the court was considering when the court said that factor that, you know, he was considering the impact it had on the child. The state argues he had a position of trust over the victim. The statutory subsection deals with the victim. The court, in listing this factor in aggravation, and the appellate court specifically found this, that the court was not referring to that he had a child with the victim or the victim's – or the child specifically. I don't believe there's any evidence – while the child was in the home, I don't believe there's any evidence the child actually witnessed this occur. And additionally, it's important to note – that this was an hour-long event throughout their home, in different rooms in their home, and that their six-year-old was in the home. That was evidence in the trial? Correct, but there's evidence that a home invasion occurred. There's evidence that a sexual assault occurred. This evidence was rejected. The defendant was convicted of aggravated domestic battery. The defendant was not convicted of all of the charges that he was charged with. And necessarily that is that the jury did reject some of that testimony. And the child was home, but I believe the testimony was that the child was in another room. And to the extent this went on for an hour long, the hour long during that, the victim testifies there was this sexual assault that occurred, there was this home invasion that occurred, and he was acquitted of these offenses. What he was convicted of is aggravated domestic battery based on strangulation. So the trial court said in the opposing sentence, among other things, his multiple convictions against women – his multiple convictions, specifically domestic violence. But then he concludes by saying, and you were in a position of trust being the father of this child. Correct. And that was error. Correct, because that's – in sentencing an argument, the state argues the specific statutory subsection of this position of trust factor and argues this applies. The trial court mirrors the aggravated factors and explicitly lists, exactly as you stated, you have a position of trust being that you're the father of this child or you had a child with her. That's not – there's no indication that that's a consideration of an impact on a child. Counsel, let me ask you another question. You're basically asking for a new sentencing hearing, right? Correct. So are you saying that based on this one statement, per se, the defendant is entitled to a new sentencing hearing? I mean, that's what it sounds like your argument is, that automatically if the court uses those words, that magic language, the defendant is entitled to a new sentencing hearing, regardless of all of the other factors that the court also mentioned. Is that your argument? Well, Your Honor, there's one step in finding error, and that would be the weight analysis. So just merely mentioning a factor, and it's evident from the record that there was essentially no weight given to this. It doesn't affect the sentence. It doesn't play a role. It's insignificant. Then in that scenario, it wouldn't be error. It's not that an error would be harmless. It's not error if it plays no role in the sentence. It doesn't affect the sentence. What the error is is actually considering the improper factor and aggravation of a sentence. So if a trial, if a sentencing court. So is it your argument that that is the one factor that the judge considered in aggravation and not all the other things? Well, Your Honor, the judge considered other aggravating factors, but this was one of the factors in aggravation. And inherent in that is that Mr. Johnson's sentence was aggravated. So back to my original question. So are you saying, based on that per se, whenever the situation arises, a defendant is entitled to a new sentence in hearing? Is that your position? Yes. My position is if there's weight placed on it, it's error. That error is second-pronged plain error. And, yes, it's a new sentencing hearing. And it's important to note this isn't a revolutionary or new position. This is a position that the appellate court has held for nearly three decades. Is your position in this particular case exacerbated by the fact that the two counts of criminal sexual assault were rejected by the jury and that this is a sentencing provision consideration specific to those charges? Correct. Well, I think that certainly tightens the error here, particularly because, as Your Honor noted, this section of the subsection applies to specific enumerated sexual offenses, and Mr. Johnson was acquitted of these offenses. But, again, it's important to note that second-pronged plain error is concerned with errors that erode the integrity of the judicial process and undermine the fairness of the proceeding. And whereas at trial there's a lot of layers of protection to ensure that a defendant receives a fair trial, which is what this court noted in Jackson where it found no second-pronged plain error in the polling of jurors, at sentencing you don't have numerous layers of protections. You have one judge fashioning essentially the length that a defendant is going to be deprived of his fundamental right to liberty. And liberty interests at that stage are incredibly heightened. They're incredibly strong. So when you have a judge explicitly state at sentencing, in aggravation of this sentence, I'm going to consider a factor that is improper on its face that necessarily erodes the integrity of the judicial process and undermines the fairness of the proceeding because the defendant's fundamental right to liberty is being increased in some part on a factor that cannot and does not apply. Counsel, we know that structural error is an error that affects the framework within the trial as to how it proceeds rather than errors in the trial process. How did this affect the framework within which the trial proceeded? Well, Your Honor, this affected the framework in which the trial or sentencing proceeded in that it goes directly to this right that you can't have your liberty deprived of in the process. And here you don't have a situation where the state argues an improper factor and the court disregards it or puts it away. You don't have a situation where the court mentions an improper factor and then reiterates, you know, I'm only sentencing on proper things. I'm not considering this. What you have here is in the ultimate determination, essentially the structure of the sentencing is you have all of these things that go into ultimately crafting the sentence, which is the deprivation of the right. Here the error isn't in the process of arguing this or recommending a sentence. The error is directly in the formulation of the deprivation of the right. It necessarily directly impacts this right that is fundamental and that we're concerned with. To compare it to a trial situation, the right at issue for trial is a fair trial. And you have rights that could deprive the fair trial. You have rights such as pulling a jury where, you know, it's an omission of a rule that's proscribed to protect it, but it doesn't necessarily go directly to that. Here it's evident this goes directly towards the right because the error occurs at the time the judge is essentially depriving him of this right. So I believe it has to be the framework. And to the extent, to find out what it is, it's difficult to imagine a situation where it could be the structure of the sentence. If you have a judge erring specifically in fashioning the length of the sentence, I think that necessarily has to be structural because that goes directly to the heart of the right that we're concerned with here. And do we know in this instance whether or not the trial court placed significant, you know, weight to this improper factor? I mean, we know that the trial court did consider four other factors in aggravation, but do we know what weight, if any, the trial court placed on this factor? Well, I think there's two points. Initially, it can't be determined that the weight is insignificant. This court has held in Bork, and I believe Hillier, but it's held in Bork specifically that remanding is required if it cannot be determined that it is insignificant. So if it can't be known based on the record, at that point you can't show that it didn't affect the sentence and it would go back. That's how courts have done this for decades. But here specifically, I think that not only is it a situation where you can't know, I think it's clear that there was some weight placed on this factor because the court imposes an extended term sentence here. It's in 10 years in the extended term of 714. And in saying why an extended term sentence and how it corrected the sentence, the court says, you know, I find the factors in aggravation mitigation. And in aggravation, I find those five factors, one of which was this improper factor. And the court explicitly states it is considered, again, an aggravation. So maybe at worst, it's not clear that the amount of weight was placed on it, but in that instance, it would require remandment. And at best, it's clear that the court did, in fact, consider this an aggravation of the sentence, where the court explicitly lists the sentence in aggravation. And then the state argues that it's not structural error because it doesn't undermine the integrity or erode the integrity of the judicial process and kind of equates structural error with the types of classes that the Supreme Court has deemed structural. But it's important to note that this court expressly rejected in Clark the notion that second-pronged plain errors are restricted to the limited class of errors that have been deemed structural. And throughout all of this court's plain error jurisprudence, dealing with second-pronged plain error, this court has emphasized that the focus must remain on the integrity of the judicial process and the fairness of the proceeding. And that's why this court in Martin, whether it's the holding, whether it's a principle of law, a finding, or dicta, this court does note unequivocally that this error affects the fundamental right to liberty of a defendant and affects the substantial right of a defendant. And since Martin, for the past three decades, the appellate courts have similarly held. Therefore, if your honors have no further questions, this court should reaffirm its pronouncement in Martin and uphold the three decades of appellate court precedent and hold that the consideration of an improper factor in aggravation of sentencing is second-pronged plain error. Thank you. Thank you, counsel. Counsel for the appellate. Good morning, your honors. Counsel may please the court. I'm Assistant Attorney General Jeremy Sawyer on behalf of the people. This court should affirm the appellate court's judgment because defendant's forfeited claim that the trial court considered an inapplicable statutory aggravating factor is not reviewable as second-pronged plain error. First, because the trial court did not clearly and obviously err by considering the fact that defendant assaulted the mother of his child. And second, the error does not qualify as second-pronged for structural error. So first, on clear, obvious error, the trial court appropriately considered as part of the nature and circumstances of the offense the fact that the victim of his violent assault was the mother of his child. And it's true that that fact did not place defendant in a position of trust relative to the victim for purposes of the statutory aggravating factor. But it was appropriate for the trial court to consider that as part of the nature and circumstances of the offense, even though it considered it under the wrong label. So the fact that the victim was the mother of defendant's child was closely intertwined with the circumstances of the offense, and that was established by the testimony at trial. Defendant used the child to gain access to the victim on the day of the assault. He was texting the victim, repeatedly harassing her, asking to see their child. And as Your Honors noted, the child was in the house for the entire period of the assault. So that was closely intertwined with the circumstances of the assault. It was appropriate for the trial court to consider that as aggravating at sentencing, even though the statutory label for position of trust did not apply. What did the appellate court find as it relates to the position of trust that the trial court used? The appellate court found that it was error. And the people conceded that it was error in the sense that that statutory aggravating factor did not apply. But the appellate court did not discuss whether it was appropriate for the trial court to substantively consider that fact. And the people would submit that it was appropriate, as it was part of the nature and circumstances of the offense. And this court is saying, people be warned, that the trial court should and must weigh at sentencing everything that has to do with the defendant's life, all the defendant's characteristics. And that was essentially what the trial court was doing, even though it considered it under an incorrect label. So turning to second prong or structural error, the error is not reviewable second prong plain error. It doesn't meet any of the requirements. First, it's not a fundamental constitutional error. It's simply a misapplication of a statutory aggravating factor. And I don't understand the defendant in his argument to cite any constitutional provision that he believes is applicable. So I understand that the defendant is relying almost entirely on this court statement, people be Martin, that the error in that case affected the fundamental right to liberty. But that was really limited to the facts of that case. And it was really a first prong plain error case. And I think reading Martin makes that clear, that the court in Martin found that the evidence was closely balanced there. And in fact, the evidence in Martin went beyond being closely balanced so as to favor leniency for the defendant. And Martin was really closely tied to the facts of that case where the court applied the first prong of the plain error test. And that was the holding of Martin. And so Martin is not a second prong plain error case. And it doesn't stand for the broad proposition that any consideration of an inapplicable statutory aggravating factor constitutes second prong plain error. Can we trust the integrity and the fairness of the sentence if we have this question of this appropriate factor being considered? Is that not structural error? It's not structural error, Your Honor. We can trust the integrity of the judicial process because the sentencing here took place within the confines of the correct framework. And I don't understand the defendant to be challenging the framework in which the sentencing process proceeded. He's not alleging, for instance, that the judge was biased against him, that he was denied counsel or anything like that. He's saying there was an error in applying the correct framework at sentencing. And that's not structural error. It doesn't erode the integrity of the judicial process. I think even if the court were to accept defendant's characterization of the holding in Martin that this type of error, second prong plain error, that holding would no longer be valid because this court has made clear in many cases recently, including in Jackson and Moon, the second prong plain error equates to structural error. And so if the holding in Martin were as broad as defendant suggests, that holding would no longer be good law. Additionally, accepting defendant's argument that this is second prong plain error because it affects the fundamental right to liberty is untenable because that would mean that every single error at sentencing would be second prong plain error because every single error at sentencing affects the fundamental right to liberty. And that would not be an administrable rule. It's not consistent with how plain error works in this court's plain error cases. So we've talked a lot about second prong plain error where there's been no abduction at trial and it's raised for the first time on appeal. So what's first prong? I think that's kind of the direction you're going. When on appeal, when the issue has not been preserved in the trial court, the defense is able to point to a mistake a trial court made, an error. There's another way of looking at this, too. You talked about second prong. What is first prong error and what does that mean? So first prong plain error would mean the evidence was closely balanced. And at sentencing it would mean that the trial court considered that the evidence in aggravation and mitigation was very closely balanced, that any change in the trial court's consideration of either aggravating or mitigating evidence would change the outcome of the sentence, would cause the sentence to be greater or lesser. And the defendant actually advanced that argument to the appellate court. He said that it was. The evidence was closely balanced, that it was first prong plain error. And the appellate court appropriately rejected that claim because it was clear from the record that the trial court did not view the evidence here as being closely balanced. It was, in fact, there was significant evidence in aggravation considering the violent nature of the assault and defendant's criminal history, the fact that he had committed this offense just two months after being released, a mandatory supervised release. So the evidence was not closely balanced and defendant hasn't advanced the argument in this court that it was closely balanced and that the first prong would apply. Finally, the error is also not structural because it's subject to harmless error analysis. This court has made clear, including in Jackson, that any error that can be analyzed for harmlessness is not structural error. And this court has already determined that this type of claim, that the sentencing court considered an improper factor, is subject to harmless error analysis. So in People v. Bork, the court held that resentencing was not required. Whenever it can be determined that the weight that was placed on the improperly considered factor was so insignificant that it did not lead to a greater sentence. So this court has already said that this type of error can be reviewed for harmlessness. And the subsequent second prong plain error decisions, including Jackson, make clear that that means that this type of error is not structural. I think at least I'm pretty certain that that's where we're at here. The problem is, or the question is, how do we determine that this was harmless, that the weight that was given? You know, it's clear that there is a significant criminal history and that the judge, you know, certainly went through that and aggravation. But then mentioning this, how do we know without any other information that it had a minimal impact? So, Your Honor, I think it's sufficient for our purposes that this type of error can be reviewed for harmlessness. And that means that it's not structural error and therefore the forfeiture isn't excusable as second prong plain error. I would also note that in this case, if the court were to address whether the error was harmless, there is sufficient evidence in the record to show that it was harmless because really the trial court mentioned this factor in passing. And the prosecution was listing certain aggregating factors that apply. And the court said, here are the aggravating factors that apply. But it didn't say that it placed any weight on it. And both at the sentencing hearing and at the hearing on defendant's motion to reconsider a sentence, the trial court made clear that the reasons that it imposed the sentence were defendant's criminal history, which was significant. He had a long criminal history of similar violence against women, and the fact that he committed this offense while on mandatory supervised release, as well as the need to deter others from committing similar crimes. And all of those were significant to the trial court's analysis. And all we have about the improperly considered factor is just listing it as one statutory aggregating factor. I think that's sufficient to say that it is harmless. Do you think it's important that he used a term of art? Instead of saying, you know, that you and Lacey share a child together, he said position of trust. I mean, is that something that we should discount or place heavier emphasis on just because of the terminology that was used? I don't think the use of the terminology really impacts the way that the trial court gave the sentence or how this court should view that error in labeling the consideration of substantively appropriate evidence. And the statute that lays out the statutory aggregating factor does say that the court shall or may consider these factors. So it's not even the case that the court had to give any weight to that factor. And I think the record does in this case show that the court did not give any significant weight to that factor. But really, that would be more of an inquiry that we would have to undertake if defendant had objected and preserved the error, which he didn't do. And so we're analyzing it under the second prong of the plain error rule. And his forfeiture is not excusable because it's not structural error. I think I understand the defendant's argument, conversely, that the court did weigh the position of trust factor significantly as being an argument, again, under the first prong of the plain error rule. So that's the argument that he's advancing today. I think that forfeiture should be excused because the evidence was closely balanced. But again, he's forfeited that claim under the first prong because he didn't advance that argument in his PLA or in his briefs. So in summary, the sentencing court did not clearly or obviously err by considering the fact that defendant assaulted the mother of his child. And the error is not structural because it's not a fundamental constitutional error. It is amenable to harmless error review. If the court has no further questions, for all these reasons, the people ask that the court affirm the appellate court's judgment. Thank you, Your Honors. Thank you very much. Counsel's appellate, and reply. Thank you, Your Honor. Just a few brief points. So first as an initial matter, to the extent that the state's arguing that the sentencing court was considering Mr. Johnson's position in relation to the child opposed to the mother, the appellate court did expressly reject that. The appellate court found that the trial judge or the sentencing judge was specifically considering that he had a position of trust over the victim, which for one, that statutory factor can't apply. And for two, there's no evidence that he did have any position of trust over the victim. He didn't live with her. There's no indication she relied on him financially at all. It was his adult ex-girlfriend. But to move to the second pronged plain error issue, initially, it's not solely Martin that Mr. Johnson relies on. It's important to emphasize that this is how this has functioned in the appellate courts for over three decades. And it's almost universal, save for the Fourth District, this is how this has functioned. And to the extent that holding that this error would be second pronged plain error would essentially open floodgates or mean every sentencing error is second pronged, it's an interesting concern. But it's a concern that hasn't played out to be true in over three decades. Mr. Johnson's not advocating for a new position. Mr. Johnson's advocating that the precedent of the Illinois courts be upheld and that the principle of law on Martin be reaffirmed. And, again, the state relies a lot on Jackson. Jackson does say structural error. But Jackson says that structural error is an error that erodes the integrity of the judicial process and undermines the fairness of the proceeding. That has been what second pronged plain error has been concerned with since pre-Jackson. In People v. Lewis, this court finds the foundation of plain error review is fundamental fairness. And in that case, this court found second pronged plain error where a street value fine was imposed without the proper evidentiary basis. And, again, the insignificant or the weight analysis, it's not a first prong argument. It's not a closely balanced argument. The insignificant weight analysis goes towards whether there's error. That's how courts have been applying it. And to the extent that it's second pronged, the error is, again, it's not mentioning a factor in passing. If the factor plays no role in the sentence, it does not affect the sentence. It's not error. The error is having an improper factor, increasing the deprivation of one's liberty based in some part on an improper or even sometimes unlawful factor. That is the error. And that's what the weight analysis goes towards. And the scenario is this improper factor was mentioned in passing, but I think it's hard to envision a scenario where the integrity of the judicial process would not be called into doubt where you have a defendant that's given an extended term sentence, is sentenced to 10 years, and of the five aggravating factors mentioned, one of them is clearly improper. Twenty percent of the factors used to aggravate the sentence is improper. And to uphold a sentence or to say that that is not an error that erodes the integrity of the judicial process or undermines the fairness of the proceeding would really be turning second pronged plain error on its head. Let me ask you this. Do you know what was the range, the proper range of sentencing from which the trial court could choose the appropriate sentence? In this case? Yes. So it was, I believe it was a Class II felony. So if it wasn't extended, it would be 3 to 7, and then extended term 7 to 14. So the sentence range was 7 to 14 years.  And the trial court chose 10. Correct. And, again, there are other improper factors or proper factors in this case, and that's why that actually illustrates the problem with not having this be reviewable as second pronged plain error because under a closely balanced analysis, it's going to be different. In a closely balanced analysis, the weight placed on the factor really doesn't matter. In closely balanced, you would essentially have a scenario where you could have a defendant commit a particularly heinous offense. The court could say, I consider the nature of the offense, and I'm going to aggravate the sentence because I don't like tall people or just something that's clearly improper or unlawful. That error, you clearly would have, even if it's increased by a day, you have a clearly improper factor and a sentence above the minimum. It could be increased even a day based on that factor. But if you eliminate second pronged plain error for this, you'd be stuck with a closely balanced prong. And in that case, you could have a situation where there's clearly a deprivation of liberty based in some part on a completely unlawful factor, but because the offense is particularly heinous or there's not much mitigating evidence, it's not closely balanced. And to uphold a sentence like that would certainly call into question the integrity of the judicial process where you have the deprivation of liberty being based on something that's just fundamentally unfair. So anything above the minimum. Well, if it's evident that this improper factor played a role in the sentence, an aggravation of the sentence, then yes, because it can't be not. And that's ultimately the challenge with this type of case, is that it's nearly impossible to know what a court is thinking in sentencing a defendant. You presume it's considering improper things, and I'm not taking issue with that presumption. But what I do mean to say is that when you have a court explicitly state, as a factor in aggravation, I am considering an aggravation and 20 percent of that is improper, it's clear that that does play a role. And in People v. Moon, one of the things that this court pointed towards in finding structural error or second-pronged claim error where a jury is not sworn in with the trial oath was the difficulty in assessing the effect of this error. It would be difficult to assess the effect of the failure to do that. And that wasn't entirely the basis of it, but it was a consideration. And the same does hold true here. You can only take what's on the record, and what's on the record here is 20 percent of the factors is improper. Now, what we know is the court considered it, and what we know is that Mr. Johnson received a 10-year sentence under the extended term range. That is sufficient to show that there's been an error that erodes the integrity of judicial process and undermines the fairness. And to, again, to touch on the Bork analysis, the Bork case was before Martin. Do you know what year? I know Martin is 88, right? Martin is 88. I have to admit, I'm thinking our claim error jurisprudence has certainly evolved a great deal since 1988. Correct. That is correct. Bork is 86. 83? Thank you. I think it's 86. Yes, the claim error analysis has evolved since Martin, but it has always dealt with fairness and integrity of judicial. I'm sorry, 83. Okay. I knew it was before Martin. Yes, it has changed, but what has remained true throughout is, you know, what's really at issue for second prong is errors that erode the integrity of judicial process and foundation of fairness. And to the extent that that's changed since Martin, this precedent holding that second prong in claim error has certainly existed post-Martin. And in Lewis, for instance, this court rejected the notion that, like, a de minimis exception to claim error would apply. This court reiterated there that, you know, again, fundamental fairness is what's at issue here. And then Jackson and Moon and Clark, in these cases, they refer to structural error. They don't really alter second prong claim error analysis to the extent that it would invalidate all of the cases that's come before it or all of the types of errors that have found to be second prong claim error. Because, again, yes, this court has said structural error, but structural error is the same type of error that's been at the heart of this claim error doctrine of the second prong forever. And then to also just touch on the forfeiture issue here, it is true that the defendant doesn't object or did not object at trial, that this issue was not preserved. However, that's going to be true for all claim error cases. That's why we have claim error. And that's why in particularly where errors that deprive the right to a fair sentencing hearing, that's why there's certain errors either where the evidence is closely balanced or errors that regardless of the closeness of the evidence, it erodes the fairness of the proceeding. And that's what's at issue here, and that's what appellate courts in the first, second, third, fifth district, and even the fourth up prior to Rathbone or Johnson have held. But, yeah, I would just say, again, if this court has no further questions, we just ask that, once again, this court uphold the three decades of the Olin Court precedent and hold the consideration of the proper factor in aggravation of sentencing as second prong claim error. And because the weight placed on the insignificant factor was not insignificant, because there was error in this case, vacate Mr. Johnson's sentence and remand him for resentencing. Thank you. Thank you very much. This case, Agenda Number 10, Number 130191, People of the State of Illinois v. Ryan Johnson, will be taken under advisement. And thank you both for your arguments.